1

2

3

4

5

6

7

8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  ARMANDO CORONADO,                           1:09-cv-00662-OWW-DLB (HC)

10                        Petitioner,          FINDINGS AND RECOMMENDATION
                                               REGARDING PETITION FOR WRIT OF
11            v.                               HABEAS CORPUS

12                                             [Doc. 1]
      CLARK, Warden
13
                          Respondent.
14   _____/

15

16            Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus

17   pursuant to 28 U.S.C. § 2254.

                                          BACKGROUND[1]
18
              Petitioner is currently in the custody of the California Department of Corrections and
19
     Rehabilitation (CDCR) following his conviction of second degree murder.  He is serving a
20
     sentence of fifteen-years-to-life.
21
              In the instant petition, Petitioner does not challenge the validity of his conviction; rather,
22
     he challenges the Board of Parole Hearings' (Board) 2007 decision finding him unsuitable for
23
     release on parole.
24
              In 2008, Petitioner filed a petition for writ of habeas corpus in Los Angeles County
25
     Superior Court challenging the Board's 2007 decision.  On May 16, 2008, the superior court
26
     denied the petition in a reasoned decision finding the circumstances of the commitment offense,
27

28
          _____

          [1] This information is taken from the petition and the exhibits attached to Respondent's answer.

1  prior criminal history, institutional misconduct, and psychological report provided some evidence

2  to support the Board's decision.

3     On June 17, 2008, Petitioner filed a petition for writ of habeas corpus in the California

4  Court of Appeal, which was denied with citation Dannenberg and Rosenkrantz.

5     On July 24, 2008, Petitioner filed a petition for writ of habeas corpus in the California

6  Supreme Court which was summarily denied.

7     Petitioner filed the instant petition for writ of habeas corpus on April 1, 2009.

8  Respondent filed an answer on June 18, 2010, and Petitioner did not file a traverse.

9                          STATEMENT OF FACTS[2]

10    On August 23, 1992, at approximately 6:40 p.m., Roberto Vasquez was sitting on the

11 front porch of his friend Omar Sanchez's house in Los Angeles, California.  Omar was in the

12 yard when a vehicle drove up and parked by a neighbor's house.  There were four or five possible

13 gang members in the car.  Petitioner was observed leaning out the window of the front passenger

14 seat pointing a small handgun in the direction of Sanchez and Vasquez and fired approximately

15 four shots at them.  Sanchez was able to duck for cover.  However, one of the bullets struck

16 Vasquez in the face.

17    Paramedics arrived at the scene and transported Vasquez to the University of Southern

18 California Medical Center where he was in critical condition.  Three days later, on August 26,

19 1992, he died as a result of a single gunshot wound to the head.

20    On August 25, 1992, police interviewed the second victim, Omar Sanchez.  Police

21 discovered that the assailants were possibly rival gang members with whom Sanchez had a prior

22 run-in.  After viewing a yearbook from Burbank Junior High School, Sanchez identified

23 Petitioner as Toby Coronado.  Petitioner was later arrested at Marshall High School.

24    Petitioner was admonished of his rights and acknowledged that he was picked up by three

25 of his friends and they drove to Sanchez's house where a weapon was fired.  Petitioner claimed

26 he was aiming at the house and not at the two victims.  After the shooting, Petitioner was driven

27

28    _____
       [2] The factual circumstances of the commitment offense are taken from the 2007 Board hearing.

                                      2

home and his friend Tony took the gun and gave it to an individual named Nancy.  The weapon, a

.25 caliber handgun, was not recovered.  The police retrieved four .25 caliber cases near the

scene as well as a bullet.  Roberto Vasquez was 12 years old when he was murdered.

DISCUSSION

There is no independent right to parole under the United States Constitution; rather, the right

exists and is created by the substantive state law which defines the parole scheme.  Hayward v.

Marshall, 603 F.3d 546, 559, 561 (9th Cir. 2010) (en banc) (citing Bd. of Pardons v. Allen, 482

U.S. 369, 371 (1987); Pearson v. Muntz, 606 F.3d 606, 609 (9th Cir. 2010) (citing Wilkinson v.

Austin, 545 U.S. 209, 221, 125 S.Ct. 2384, 162 L.Ed.2d 174 (2005)); Cooke v. Solis, 606 F.3d

1206, 1213 (9th Cir. 2010).  "[D]espite the necessarily subjective and predictive nature of the

parole-release decision, state statutes may create liberty interests in parole release that are entitled

to protection under the Due Process Clause."  Bd. of Pardons v. Allen, 482 U.S. at 371.

In California, the Board of Parole Hearings' determination of whether an inmate is

suitable for parole is controlled by the following regulations:

(a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for a denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

(b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

Cal. Code Regs. tit. 15, §§ 2402(a) and (b).  Section 2402(c) sets forth circumstances tending to

demonstrate unsuitability for release.  "Circumstances tending to indicate unsuitability include:

(1) Commitment Offense.  The prisoner committed the offense in an especially heinous, atrocious or cruel manner.  The factors to be considered include:

///

3

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution-style murder.

(C) The victim was abused, defiled or mutilated during or after the offense.

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence.  The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History.  The prisoner has a history of unstable or tumultuous relationships with others.'

(4) Sadistic Sexual Offenses.  The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors.  The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior.  The prisoner has engaged in serious misconduct in prison or jail.

Cal. Code Regs. tit. 15, § 2402(c)(1)(A)-(E),(2)-(9).

Section 2402(d) sets forth the circumstances tending to show suitability which include:

(1) No Juvenile Record.  The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History.  The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse.  The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime.  The prisoner committed his crime as a result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Battered Woman Syndrome.  At the time of the commission of the crime, the prisoner suffered from Battered Woman Syndrome, as defined in section 2000(b), and it appears the criminal behavior was the result of that victimization.

(6) Lack of Criminal History.  The prisoner lacks any significant history of violent crime.

(7) Age.  The prisoner's present age reduces the probability of recidivism.

(8) Understanding and Plans for Future.  The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

1  (9) Institutional Behavior.  Institutional activities indicate an enhanced ability to function
2  within the law upon release.

3  Cal. Code Regs. tit. 15, § 2402(d)(1)-(9)

4      The California parole scheme entitles the prisoner to a parole hearing and various

5  procedural guarantees and rights before, at, and after the hearing.  Cal. Penal Code § 3041.5.  If

6  denied parole, the prisoner is entitled to subsequent hearings at intervals set by statute.  Id.  In

7  addition, if the Board or Governor find the prisoner unsuitable for release, the prisoner is entitled

8  to a written explanation. Cal. Penal Code §§ 3041.2, 3041.5.  The denial of parole must also be

9  supported by "some evidence," but review of the Board's or Governor's decision is extremely

10  deferential.  In re Rosenkrantz, 29 Cal.4th 616, 128 Cal.Rptr.3d 104, 59 P.3d 174, 210 (2002).

11      Because California's statutory parole scheme guarantees that prisoners will not be denied

12  parole absent some evidence of present dangerousness, the Ninth Circuit Court of Appeals

13  recently held California law creates a liberty interest in parole that may be enforced under the

14  Due Process Clause.  Hayward v. Marshall, 602 F.3d at 561-563; Pearson v. Muntz, 606 F.3d at

15  609.  Therefore, under 28 U.S.C. § 2254, this Court's ultimate determination is whether the state

16  court's application of the some evidence rule was unreasonable or was based on an unreasonable

17  determination of the facts in light of the evidence.  Hayward v. Marshall. 603 F.3d at 563;

18  Pearson v. Muntz, 606 F.3d at 608.

19      The applicable California standard "is whether some evidence supports the *decision* of

20  the Board or the Governor that the inmate constitutes a current threat to public safety, and not

21  merely whether some evidence confirms the existence of certain factual findings."  In re

22  Lawrence, 44 Cal.4th 1181, 1212 (2008) (emphasis in original and citations omitted).  As to the

23  circumstances of the commitment offense, the Lawrence Court concluded that

24
25      although the Board and the Governor may rely upon the aggravated circumstances
        of the commitment offense as a basis for a decision denying parole, the aggravated
26      nature of the crime does not in and of itself provide some evidence of current
        dangerousness to the public unless the record also establishes that something in
27 ///  the prisoner's pre- or post-incarceration history, or his or her current
28 ///

5

1
2
3

demeanor and mental state, indicates that the implications regarding the prisoner's dangerousness that derive from his or her commission of the commitment offense remain probative to the statutory determination of a continuing threat to public safety.

4   Id. at 1214.

5       In addition, "the circumstances of the commitment offense (or any of the other factors

6   related to unsuitability) establish unsuitability if, and only if, those circumstances are probative to

7   the determination that a prison remains a danger to the public.  It is not the existence or

8   nonexistence of suitability or unsuitability factors that forms the crux of the parole decision; the

9   significant circumstance is how those factors interrelate to support a conclusion of current

10   dangerousness to the public."  In re Lawrence, 44 Cal.4th at 1212.

11       "In sum, a reviewing court must consider 'whether the identified facts are *probative* to the

12   central issue of *current* dangerousness when considered in light of the full record before the

13   Board or the Governor.'"  Cooke v. Solis, 606 F.3d at 1214 (emphasis in original) (citing

14   Hayward v. Marshall, 603 F.3d at 560).

15       In the last reasoned decision, the Los Angeles County Superior Court denied the petition

16   stating in pertinent part:

17           The Board found the Petitioner unsuitable for parole after a parole
        consideration hearing held on November 14, 2007.  The Petitioner was denied
18       parole for three years.  The Board concluded that the Petitioner was unsuitable for
        parole and would pose an unreasonable risk of danger to society or a threat to
19       public safety if he is released.  The Board based its decision primarily on the
        commitment offense.
20
            The Court finds that there is some evidence to support the Board's finding
21       that the commitment offense was carried out in a dispassionate and calculated
        manner.  Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(B).  The Petitioner was
22       clearly intending to fire his gun in retaliation for the prior shooting at his
        grandmother's vehicle.  Multiple victims were attacked, injured, or killed in the
23       same or separate incidents.  Cal. Code Regs., tit. 15, § 2402, subd. (c)(1)(A).  Mr.
        Vasquez was killed and Mr. Sanchez was shot at as well.
24
            The Court also finds that Petitioner had a previous criminal history as a
25       juvenile, including disorderly conduct and taking a vehicle without the owner's
        consent.  He also had two recent 115s, in 2005 and 2006.  In addition, the
26       psychological report indicated that he was an above average risk for violence in
        the community.  The Board properly considered these facts in making its decision.
27       Cal. Code Regs., tit. 15, § 2402, subd. (b).

28   ///

The Board also noted that the District Attorney's Office had opposed the Petitioner's release.  While this is not a factor on which the Board may rely on deny parole, such opposition may be properly considered.  Penal Code § 3402.

As noted by the California Supreme Court, the commitment offense alone can constitute a sufficient basis for denial of parole and the Board can weigh the amount of violence involved heavily in making its decision.  *In re Dannenberg* (2005) 34 Cal.4th 1061, 1084.  In this case, the Board properly considered the commitment offense, the previous criminal history, and his psychological report.

The Board also noted several positive gains that the Petitioner has achieved while incarcerated.  However, it concluded that despite these gains, the Petitioner posed an unreasonable threat to public safety at the time of its hearing.  Penal Code § 3041(b).

(Ex. 2, to Answer.)

The California Court of Appeal denied the petition stating, "The petition for writ of habeas corpus, filed June 17, 2008, has been read and considered and is denied.  (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1070-1071; *In re Rosenkrantz* (2002) 29 Cal.4th 616.)  If more than one state court has adjudicated a claim in a reasoned decision, the federal court will in general review the last reasoned decision; however, if the last reasoned decision of the state court adopts or substantially incorporates the analysis and reasoning of the prior decision, this Court may look to both state court decisions to fully consider the reasoning of the last decision.  Barker v. Fleming, 423 F.3d 1085, 1093 (9th Cir. 2005); Weaver v. Palmateer, 455 F.3d 958, 963 n.6 (9th Cir. 2006).

The state courts reasonably concluded that the commitment offense was carried out in a dispassionate and calculated manner.  Cal. Code Regs. tit. 15, § 2402, subd. (c)(1)(B).  After Petitioner's grandmother's home was shoot at by rival gang members, Petitioner armed himself with a handgun and intentionally drove to Sanchez's home with the intent of shooting him.  Petitioner was observed hanging out of the front passenger seat and fired the handgun several times in the direction of Sanchez and Vasquez, and ultimately struck Vasquez (an innocent 12-year-old victim) in the face.  The victim died three days later from the gunshot wound.  The act of randomly firing four rounds of gunfire in the direction of the Sanchez and Vasquez supports the finding it was dispassionate and calculated, as he could have easily hit others than just Vasquez.

1   In addition, multiple victims were attacked during the incident.  Cal. Code Regs. tit. 15, § 2402,

2   subd. (c)(1)(A).

3       Petitioner also had a prior criminal history, including disorderly conduct and taking a

4   vehicle without the owner's consent.  Moreover, in the two years proceeding the instant hearing,

5   Petitioner suffered two serious rules violations (CDC 115s).  Cal. Code Regs. tit. 15, §

6   2402(c)(6) (institutional behavior shows unsuitability for parole where "[t]he prisoner has

7   engaged in serious misconduct in prison").  These serious rules violations certainly raised doubt

8   as to whether Petitioner could abide by the rules and conform to societal norms, particularly

9   given the psychological assessment that he lacked sufficient insight and remained above average

10  risk to public safety if released, and such evidence is probative on the issue of whether Petitioner

11  remains a current risk of danger to the public safety.

12      The most recent psychological report authored by Dr. Richard Kendal, also demonstrated

13  that Petitioner is a current risk of danger, as he is an above average risk for violence if released.

14  Dr. Kendal also stated that Petitioner has not taken full responsibility for the shooting and killing

15  the innocent victim.  Petitioner continued to maintain that he simply intended to shoot at the roof

16  of the house.  Yet, Petitioner acknowledged seeing Sanchez and Vasquez prior to shooting and

17  struck Vasquez directly in the face, which belies his statement he was merely attempting to shoot

18  at the roof.

19      Thus, these factors taken in combination provide some evidence that Petitioner is

20  currently a danger to public safety if released.  The state courts' determination of this issue was

21  not contrary to, or an unreasonable application of the some evidence standard, nor was it an

22  unreasonable determination of the facts in light of the evidence.  28 U.S.C. § 2254(d).

23                              RECOMMENDATION

24      Based on the foregoing, it is HEREBY RECOMMENDED that:

25      1.      The instant petition for writ of habeas corpus be DENIED; and

26      2.      The Clerk of Court be directed to enter judgment in favor of Respondent.

27      This Findings and Recommendation is submitted to the assigned United States District

28  Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 304 of the

1   Local Rules of Practice for the United States District Court, Eastern District of California.

2   Within thirty (30) days after being served with a copy, any party may file written objections with

3   the court and serve a copy on all parties.  Such a document should be captioned "Objections to

4   Magistrate Judge's Findings and Recommendation."  Replies to the objections shall be served

5   and filed within fourteen (14) days after service of the objections.  The Court will then review the

6   Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that

7   failure to file objections within the specified time may waive the right to appeal the District

8   Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

9

10      IT IS SO ORDERED.

11   **Dated:    September 1, 2010            /s/ Dennis L. Beck**
                                             UNITED STATES MAGISTRATE JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28